# EXHIBIT A

IN THE NEW YORK CITY
CIVIL COURT
KINGS COUNTY
CIVIL DIVISION

| | |
|---|---|
| *Martha M. Alcivar,* Plaintiff, | Index Number: 03096 |
| *vs.* | *Summons* |
| *Ally Financial Inc., Barclays Bank Delaware, CitiBank, N.A., Equifax Information Services L.L.C., Experian Information Solutions, Inc., and Trans Union (of Delaware), L.L.C.,* Defendants. | Plaintiff's Residence Address: 61 Lewiston St., Staten Island, NY 10314<br>The basis of the venue designated is: Civil Practice Law & Rules Section 509, which is the county designed by the plaintiff. |

To the above named Defendants:

Ally Financial Inc.
c/o Registered Agent:
CT Corporation System
28 Liberty Street, Floor 42
New York, NY 10005

Barclays Bank Delaware
c/o Registered Agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

CitiBank, N.A.
Registered Agent
5800 South Corporate Place
Sioux Falls, SD 57108

Equifax Information Services L.L.C.
c/o Registered Agent:
Corporation Service Company
80 State Street
Albany, NY 12207

Experian Information Solutions, Inc.
c/o Registered Agent:
CT Corporation System
28 Liberty Street, Floor 42
New York, NY 10005

Trans Union (of Delaware), LLC
c/o Registered Agent:
Corporation Service Company
80 State Street
Albany, NY 12207

YOU ARE HEREBY SUMMONED to appear in the Civil Court of the City of New York, County of Kings at the office of the Clerk of the said Court at 141 Livingston Street, Room 303, Brooklyn, NY 11201 in the County of Kings City and State of New York, within the time provided by law as noted below and to file your answer to the annexed complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the sum of $ 50,000 per cause of action, with interest thereon from the 24th day of August 2026, together with the costs of this action.

Dated, the 24th day of August 2026

_______________ or _______________

Clerk

Attorney(s) for Plaintiff
Paul Camarena, Esq.
5614 Connecticut Ave N.W., No. 256
Washington, D.C. 20015
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty Reg No: 3991981

FILED
SEP 09 2026
CIVIL COURT
KINGS COUNTY

NOTE: The law provides that:

(a) if this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or

(b) if this summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

14832574.1.3-29

**IN THE NEW YORK CITY**
**KINGS COUNTY**
**CIVIL COURT**
**CIVIL DIVISION**

| | |
|---|---|
| *MARTHA M. ALCIVAR,* | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) |
| | ) |
| *ALLY FINANCIAL INC.,* | ) |
| *BARCLAYS BANK DELAWARE,* | ) |
| *CITIBANK, N.A.,* | ) |
| *EQUIFAX INFORMATION SERVICES L.L.C.,* | ) |
| *EXPERIAN INFORMATION SOLUTIONS, INC.,* | ) |
| *and TRANS UNION (OF DELAWARE), L.L.C.,* | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Martha M. Alcivar, by her counsel Paúl Camarena, respectfully complains as follows:

**Introduction.**

1) Pursuant to the United States Fair Credit Reporting Act's regulatory scheme, when consumer information is reported by a creditor to a credit reporting agency, the consumer can exercise a right to dispute that information. The creditor (or "Credit Data Furnisher") must then reasonably investigate that information and the credit reporting agency (or "C.R.A.") must reasonably re-investigate that same information. If the Credit Data Furnisher's investigation or the C.R.A.'s re-investigation does not verify that information, the Credit Data Furnisher and the CRA must delete that information from all credit reports on the consumer.

2) In the instant case, Credit Data Furnishers Ally Financial, Barclays Bank, and Citibank reported inaccurate information about Plaintiff Martha Alcivar to CRA's Equifax, Experian, and TransUnion; and Plaintiff Ms. Alcivar repeatedly disputed the Credit Data Furnishers' inaccurately reported information to the CRA's.

14832574.1.4-29

3) However, the Defendant Credit Data Furnishers repeatedly failed to reasonably investigate their own inaccurately reported information, and the Defendant CRA's also repeatedly failed to reasonably re-investigate that same information, much less delete that information from credit reports on Ms. Alcivar.

4) The Defendant Credit Data Furnishers reported inaccurate information about Ms. Alcivar, and the Defendant CRA's included inaccurate information in their credit reports on Ms. Alcivar. That said, the U.S. Fair Credit Reporting Act mandated the Defendants to perform reasonable investigations and re-investigations, and each Defendant's failure to reasonably investigate or re-investigate was *per se* a violation of the U.S. F.C.R.A., regardless of whether any Defendant's information was inaccurate. *Spokeo v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1550 (2016) ("On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, [ a] ***violation*** of one of the FCRA's procedural requirements may result in no harm. For example, even if a credit reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.") (emphasis added) (dismissing FCRA claim because the FCRA violation did not result in any harm or a case or controversy as required by Article III of the U.S. Constitution. However, "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute." *Asarco v. Kadish*, 490 U.S. 605, 617 (1989)).

14832574.1.5-29

**Jurisdiction.**

5) The FCRA, at 15 U.S.C. §§ 1681n and o, states that "[a]ny person who is negligent in failing to comply" or "who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." The FCRA, at 15 U.S.C. § 1681p, also states that an "action to enforce any liability created under this subchapter may be brought in any … court of competent jurisdiction."

6) The New York City Civil Court Act, at Section 202, states that the N.Y.C. Civil "[C]ourt shall have jurisdiction of actions and proceedings for the recovery of money ... where the amount sought to be recovered or the value of the property does not exceed $50,000." The NYC C.C.A. Section 211 additionally states that, "[w]here several causes of action are asserted in the complaint and each of them would be within the jurisdiction of the court if sued upon separately, the court shall have jurisdiction of the action [and i]n such case judgment may be rendered by the court in excess of $50,000." *See also*, *Metrotran Advertising v. Cado Transportation*, 156 Misc. 2d 725, 727, 601 N.Y.S.2d 684, 684, 1993 N.Y. Misc. LEXIS 347, *4 (NYC Civ. Ct. - Kings County 1990) ("the claim for attorney's fees is a separate cause of action").

7) Ms. Alcivar seeks to recover no more than $50,000 <u>per cause of action</u> and, thus, this Court has jurisdiction over this action.

14832574.1.6-29

**Parties.**

8) Plaintiff Ms. Alcivar is a natural person and, thus, is a "consumer" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(c).

9) Defendant Ally Financial Inc. is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Ally Financial was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

10) Defendant Barclays Bank is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Barclays Bank was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

11) Defendant Citibank N.A. is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Citibank was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

12) Defendant Equifax regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

13) Defendant Experian regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

14) Defendant TransUnion regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

14832574.1.7-29

**Factual Allegations.**

Furnisher Ally Financial and Credit Reporting Agency Equifax.

15) Several years ago, Ms. Alcivar borrowed in good faith $ 87,380 from Ally Financial. However, Ms. Alcivar struggled to make payments on her debt for years before she finally defaulted and Ally Financial charged-off the remaining balance of $ 26,312.

16) Ally Financial correctly reported to Equifax and to Experian the fact that Ms. Alcivar had defaulted on her debt and that Ally Financial charged-off a remaining balance. However, Ally Financial inaccurately reported the "original charge-off" amount as $ 87,380, which overstates Ally Financial's loss by over $60,000.

17) Thus, Ms. Alcivar repeatedly disputed Ally Financial's inaccurate reporting to Equifax and to Experian and, upon Ms. Alcivar's information and belief, her repeated disputes were forwarded to Ally Financial by Equifax and/or Experian, as required by Subsection 1681i(a)(2) of the FCRA.

18) In Ms. Alcivar's repeated disputes to Equifax and to Experian, Ms. Alcivar specifically explained that Ally Financial's "actual original charge-off amount was tens of thousands of dollars less" than Ally Financial's reported original charge-off amount.

19) Ms. Alcivar's repeated disputes also listed her telephone number and email address, and Ms. Alcivar repeatedly requested Ally Financial and Equifax to contact her to investigate her disputes.

14832574.1.8-29

20) However, Defendants Ally Financial and Equifax never even bothered to attempt to contact Ms. Alcivar to investigate her repeated disputes; Defendants Ally Financial and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate reports; and Defendant Ally Financial continues to report its inaccurate information about Ms. Alcivar's account to Defendant Equifax, which continues to include that same inaccurate information in its credit reports on Ms. Alcivar.

14832574.1.9-29

Furnisher Barclays Bank and Credit Reporting Agency Equifax.

21) The FCRA provides that, when credit data furnishers report a delinquent account to a credit reporting agency, they must also report the account's "Date of First Delinquency." *Seamans v. Temple*, 901 F. Supp. 2d 584, 594 (E.D.Pa. 2012) (15 U.S.C. "§ 1681s-2(a)(5)(A) requires furnishers to provide the date of first delinquency."). The "Date of First Delinquency" is important because, while all delinquencies lower credit scores, newer, more recent delinquencies lower credit scores more than older, more dated delinquencies. *See, e.g., In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) (citing study stating that "reporting newer negative late payment information would lower the consumer's credit score") (emphasis added); Equifax Website (noting that one of "the most significant factors for why [a credit] score was not higher" is that the "time since delinquency [wa]s too recent") (emphasis added), available at https://assets.equifax.com/legacy/pdfs/corp/EFS-659-ADV_BPR.pdf ; *Sanchez v. JPMorgan*, 643 F. Supp. 3d 1025, 1031 (D.Arz. 2022) (noting that consumer was denied a credit card because the "[t]ime since delinquency [wa]s too recent") (emphasis added); TransUnion Website (noting that "credit scores are more influenced by recent credit behavior, so the impact of individual late payments tends to lessen over time") (emphasis added), available at www.transunion.com/blog/ credit-advice/how-long-do-late-payments-stay-on-your-credit-report .

14832574.1.10-29

22) Also, "under the FCRA, the account can only stay on record up to seven years following the date of first delinquency." *Ayala v. Experian*, 2024 U.S. Dist. Lexis 56215, *3, 2024 WL 1328827, *1, 22 cv 4935 (N.Dist. Ill. March 28, 2024). *See also*, *Hadden v. University Accounting Services*, 2021 U.S. Dist. Lexis 272134, *17, 2021 WL 12297785, 18 cv 81385 (S.D. FL. April 20, 2021) ("Failure to report accurately this date is material, since the date of first delinquency report drives a CRA's calculation of the date on which the debt 'ages out' and must be dropped from the report (generally seven years from the DOFD)."). Thus, Equifax credit reports note that an "account can remain on [consumers'] credit reports for up to seven years from the date [they] **first miss a payment**." Hence, the newer or the more recent the "Date of First Delinquency," the longer the delinquency will remain on a credit report.

14832574.1.11-29

23) The FCRA, at Subsection 1681s-2(a)(5)(A), notes that the "Date of First Delinquency" is necessarily in "the month and year of the commencement of the delinquency on the account that immediately preceded" the chargeoff. "[T]he Federal Trade Commission[, from October 26, 1970] up until July 26, 2011, regulated the implementation of the FCRA," *Lamson v. EMS*, 868 F. Supp. 2d 804, 817 (E.D.Wis. 2012), and the F.T.C. has consistently interpreted this "month and year of the commencement of the delinquency that immediately preceded the chargeoff [to be] the month the **first payment was missed**." Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011), p. 93 (emphasis added), available at www.ftc.gov/sites/default/files/ documents/reports/ 40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf . See also, FTC Staff Opinion Letter – Johnson – August 31, 1998 ("the phrase 'commencement of the delinquency that led to the action' in Sections 605(c)(1) and 623(a)(5) of the FCRA should be construed according to its normal meaning[ and, thus, i]f a consumer falls behind on an account and never catches up, the delinquency has its 'commencement' when the **first payment is missed**") (emphasis added), available at www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-johnson-08-31-98 ; FTC Staff Opinion Letter – Gillespie – March 10, 1998 (FTC describing a case involving "a 36-month lease entered on June 10, 1996, on which the consumer makes 3 timely payments [and] misses one payment (September)," with the FTC stating that "'the commencement of the delinquency' for the account would also be September 1996 because the **missed (and never made-up) payment** was due on or before September 30, 1996") (emphasis added), available at www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-gillespie-03-10-98 .

14832574.1.12-29

24) In the instant case, Ms. Alcivar opened a credit card account with Barclays Bank several years ago. However, Ms. Alcivar always struggled to pay her credit account on time, her account payments finally became delinquent in 2024, and she was first charged a delinquency fee by Barclays Bank in 2024.

25) Barclays Bank reported Ms. Alcivar's account's entire delinquency to Equifax and to Experian. However, Barclays Bank inaccurately reported that Ms. Alcivar's account's "Date of First Delinquency" did not occur until 2025.

26) Barclays Bank's inaccurately reported "Date of First Delinquency" is conveying that Ms. Alcivar's financial delinquency occurred more recently than it actually did and, thus, Barclays Bank is causing Ms. Alcivar's credit score to improperly further decrease. *Supra*, ¶ 21 (*In re Anzaldo*, 612 B.R. at 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score")). Barclays Bank's inaccurately reported "Date of First Delinquency" also risks illegally extending "the date on which the debt 'ages out' and must be dropped from the report." *Hadden v. University Accounting*, 2021 U.S. Dist. Lexis 272134, *17, 2021 WL 12297785 (S.D. FL.2021) cited *supra,* ¶ 22.

27) Hence, Ms. Alcivar repeatedly disputed Barclays Bank's inaccurate reporting to Equifax and to Experian and, upon Ms. Alcivar's information and belief, her repeated disputes were forwarded to Barclays Bank by Equifax and/or Experian, as required by Subsection 1681i(a)(2) of the FCRA.

28) In Ms. Alcivar's repeated disputes to Equifax and to Experian, Ms. Alcivar specifically explained that Barclays Bank is "inaccurately reporting that [Ms. Alcivar's] account payment's 'Date of FIRST Delinquency' was in 2025." (Emphasis in original.)

14832574.1.13-29

29) Ms. Alcivar's repeated disputes also listed her telephone number and email address, and Ms. Alcivar repeatedly requested Barclays Bank and Equifax to contact her to investigate her disputes.

30) However, Defendants Barclays Bank and Equifax never even bothered to attempt to contact Ms. Alcivar to investigate her repeated disputes; Defendants Barclays Bank and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate reports; and Defendant Barclays Bank continues to report its inaccurate information about Ms. Alcivar's account to Defendant Equifax, which continues to include that same inaccurate information in its credit reports on Ms. Alcivar.

14832574.1.14-29

Furnisher Citibank and Credit Reporting Agencies Equifax, Experian, and TransUnion.

Citibank, Equifax, Experian, and TransUnion's Failures to Investigate Ms. Alcivar's Disputes.

31) Several years ago, Citibank extended a credit card to Ms. Alcivar. On October 9, 2024, Citibank advised Ms. Alcivar that she had a "Minimum Payment Due [of] $ 78.01" by November 5, 2024; and, on November 8, 2024, Citibank acknowledged that Ms. Alcivar had paid $ 100.00 before November 5, 2024.

32) Also on November 8, 2024, Citibank advised Ms. Alcivar that her next payment's "Due Date" was not until December 5, 2024. (Emphasis added.) However, Citibank inexplicably reported to Equifax, Experian, and TransUnion that Ms. Alcivar's account payment was already past due by 30 days in December 2024; and Citibank's inaccurately reported information was included in Equifax, Experian, and TransUnion credit reports on Ms. Alcivar.

33) Thus, Ms. Alcivar repeatedly disputed Citibank's inaccurate reporting to Equifax, Experian, and TransUnion and, upon Ms. Alcivar's information and belief, her repeated disputes were forwarded to Citibank by Equifax, Experian, and/or TransUnion, as required by Subsection 1681i(a)(2) of the FCRA.

34) In Ms. Alcivar's repeated disputes, Ms. Alcivar specifically explained that her "account had a minimum payment due of $ 78.01 and a payment due date of November 5, 2024[ and] a payment of $100.00 was, in fact, made before November 5, 2024, and the next payment due date was not until December 5, 2024. Thus, this account could not have been past due 30 days in December 2024 (which had only 31 days) and [ ] CitiBank reporting that this account was past due 30 days in December 2024 is inaccurate."

35) Ms. Alcivar's repeated disputes also listed her telephone number and email address, and Ms. Alcivar repeatedly requested Citibank, Equifax, Experian, and TransUnion to contact her to investigate her disputes.

14832574.1.15-29

36) However, Defendants Citibank, Equifax, Experian, and TransUnion never even bothered to attempt to contact Ms. Alcivar to investigate her repeated disputes; Defendants Citibank, Equifax, Experian, and TransUnion repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported information or inaccurate reports; and Defendant Citibank continues to report its inaccurate information about Ms. Alcivar's account to Defendants Equifax, Experian, and TransUnion, which continue to include that same inaccurate information in their credit reports on Ms. Alcivar.

14832574.1.16-29

Citibank, Equifax, Experian, and TransUnion's Failures to Note Ms. Alcivar's Disputes.

Defendant Citibank.

37) "Whether or not a consumer is disputing a debt is no minor matter … as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery*, 889 F.3d 337, 349 (7th Cir. 2018). More specifically, "a debt marked as disputed negatively impacts a credit score less than a debt that is not marked as disputed." *Wood v. Security Credit*, 126 F.4th 1303, 1310 (7th Cir. 2025). Thus, a "defendant's decision to report [a] debt but not [a] dispute result[s] in a much lower credit score for [a] plaintiff than a report of both the debt and the dispute." *Lueck v. Bureaus, Inc.*, 2021 U.S. Dist. LEXIS 178592, *6, 2021 WL 4264368, 20 cv 2017 (N.D.Ill. September 20, 2021) (citations and internal brackets omitted). Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA requires furnishers to report that fact when reporting the disputed information," and a "furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009).

38) Nevertheless, although Ms. Alcivar's disputes repeatedly protested that "CitiBank should not report this debt without also reporting this dispute," Defendant Citibank "deci[ded] to report [Ms. Alcivar's] debt but not [her] dispute" and this "result[ed] in a much lower credit score." *Lueck v. Bureaus, Inc.*, 2021 U.S. Dist. LEXIS 178592, *6, 2021 WL 4264368 (N.D.IL. 2021).

14832574.1.17-29

<u>Defendants Equifax, Experian, and TransUnion.</u>

39) The FCRA, at 15 U.S.C. § 1681i(c), specifically states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).

40) In the instant case, Ms. Alcivar's repeated disputes to Equifax, Experian, and TransUnion specifically stated that, "based on [her] statement of dispute, [Equifax, Experian, and TransUnion] should clearly note that Citibank's reported information about this debt is disputed by" her. Nevertheless, Defendants Equifax, Experian, and TransUnion repeatedly failed to note that Defendant Citibank's reported information about Ms. Alcivar's account was disputed by her, in direct violation of Section 1681i(c).

14832574.1.18-29

## **Causes of Action**

Count One – As to Defendant Ally Financial's Failures to Reasonably Investigate.

41) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

42) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

43) Defendant Ally Financial negligently or willfully violated Subsection 1681s-2(b)(1)(A) by repeatedly failing to conduct reasonable investigations with respect to information about Ms. Alcivar that Defendant Ally Financial itself is reporting to a credit reporting agency.

14832574.1.19-29

<u>Count Two – As to Defendant Barclays Bank's Failures to Reasonably Investigate.</u>

44) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

45) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

46) Defendant Barclays Bank negligently or willfully violated Subsection 1681s-2(b)(1)(A) by repeatedly failing to conduct reasonable investigations with respect to information about Ms. Alcivar that Defendant Barclays Bank itself is reporting to a credit reporting agency.

14832574.1.20-29

Count Three – As to Defendant Citibank's Failures to Reasonably Investigate.

47) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

48) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

49) Defendant Citibank negligently or willfully violated Subsection 1681s-2(b)(1)(A) by repeatedly failing to conduct reasonable investigations with respect to information about Ms. Alcivar that Defendant Citibank itself is reporting to a credit reporting agency.

14832574.1.21-29

Count Four – As to Defendant Citibank's Failures to Notate Ms. Alcivar's Disputes.

50) The Fair Credit Reporting Act's Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete or inaccurate, report those results." Further, "a disputed credit file that lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the FCRA," *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1164 (9th Cir. 2009), because "a disputed debt differs materially from an undisputed debt even if the consumer would not succeed at a trial of the dispute." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008). Thus, "[i]f a consumer disputes the accuracy of credit information, the FCRA requires furnishers to report that fact when reporting the disputed information" and the "furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Gorman*, at 1162 (citing *Saunders*, at 150). *See also*, *Seamans v. Temple University*, 744 F.3d 853, 867 (3d Cir. 2014) ("a private cause of action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed"); *Boggio v. USAA*, 696 F.3d 611, 618 (6th Cir. 2012) ("a furnisher violates § 1681s-2(b)(1)(D) if it fails to identify that a consumer disputes her information"); *Santessi v. Experian*, 2020 WL 13401919, *3, 20 cv 22689 (S.D. Fla. October 26, 2020) ("a failure to notify a CRA of disputed account information is actionable by private parties under section 1681s-2(b)"); *Collins v. BAC Home Loans*, 912 F.Supp.2d 997, 1010 (D. Col. December 12, 2012) ("this failure to report the debts as disputed gave rise to a private cause of action under section 1681s–2(b)").

14832574.1.22-29

51) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

52) Defendant Citibank negligently or willfully violated Subsection 1681s-2(b)(1)(D) by repeatedly reporting information about Ms. Alcivar's debt to a credit reporting agency without notating that Ms. Alcivar is disputing that information.

14832574.1.23-29

Count Five – As to Defendant Equifax's Failures to Reasonably Reinvestigate.

53) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

54) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

55) Defendant Equifax negligently or willfully violated Subsection 1681i(a)(1)(A) by repeatedly failing to conduct reasonable reinvestigations into information regarding Ms. Alcivar that is being reported by Defendants Ally Financial, Barclays Bank, and Citibank.

Count Six – As to Defendant Equifax's Failures to Note Disputes.

56) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(c), states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).

57) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

58) Defendant Equifax negligently or willfully violated Subsection 1681i(c) by negligently or willfully failing to note that creditor reported information about Ms. Alcivar is disputed by her.

Count Seven – As to Defendant Experian's Failures to Reasonably Reinvestigate.

59) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

60) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

61) Defendant Experian negligently or willfully violated Subsection 1681i(a)(1)(A) by repeatedly failing to conduct reasonable reinvestigations into information regarding Ms. Alcivar that is being reported by Defendant Citibank.

14832574.1.26-29

Count Eight – As to Defendant Experian's Failures to Note Disputes.

62) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(c), states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).

63) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

64) Defendant Experian negligently or willfully violated Subsection 1681i(c) by negligently or willfully failing to note that creditor reported information about Ms. Alcivar is disputed by her.

14832574.1.27-29

Count Nine – As to Defendant TransUnion's Failures to Reasonably Reinvestigate.

65) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

66) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

67) Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(1)(A) by repeatedly failing to conduct reasonable reinvestigations into information regarding Ms. Alcivar that is being reported by Defendant Citibank.

14832574.1.28-29

Count Ten – As to Defendant TransUnion's Failures to Note Disputes.

68) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(c), states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).

69) "Additionally, several courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Augustin v. Capital One*, 2015 U.S. Dist. LEXIS 129550, *15, 2015 WL 5657365, 14 cv 179 (E.D.N.Y. July 27, 2015) (citations and internal quotations omitted).

70) Defendant TransUnion negligently or willfully violated Subsection 1681i(c) by negligently or willfully failing to note that creditor reported information about Ms. Alcivar is disputed by her.

14832574.1.29-29

**Prayer for Relief.**

WHEREFORE, Plaintiff Martha Alcivar respectfully prays that this Honorable Court will hold a trial by jury and that this Court will enter judgment in her favor, and against the Defendants, for her actual damages, for statutory damages, for reasonable attorney's fees and costs, and for punitive damages.

Respectfully submitted,
Plaintiff Martha M. Alcivar's Counsel
Paúl Camarena

________________ 08/16/26

Paúl Camarena, Esq.
5614 Connecticut Ave. N.W., No. 256
Washington, DC 20015
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty Reg No: 3991981